UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DISABILITY RIGHTS CENTER-NH,<br>Plaintiff,<br><br>v.<br><br>HELEN HANKS, in her official capacity as<br>Commissioner of the NEW HAMPSHIRE<br>DEPARTMENT OF CORRECTIONS, and<br>MICHAEL A. ZENK, in his official capacity<br>as Warden of the NEW HAMPSHIRE<br>STATE PRISON FOR MEN,<br>Defendants. | CIVIL ACTION<br>FILE NO. _____ |

### **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, the Disability Rights Center-NH ("DRC") seeks to investigate whether the death of an individual with mental illness while housed at the State Prison for Men was the result of neglect. Federal law authorizes DRC to conduct such an investigation and obligates Defendants, administrators of the New Hampshire Department of Corrections and State Prison for Men, to cooperate by promptly producing requested records. However, Defendants refuse to provide the records, thereby impeding DRC from exercising its federally mandated duty to protect and advocate for individuals with mental illness in New Hampshire. DRC asks this Court to preliminarily and permanently enjoin Defendants from violating federal law and order Defendants to produce the records so that DRC can conduct a full investigation into the circumstances which led to this individual's death.

### I. INTRODUCTION

1.  DRC brings this action for declaratory judgment and injunctive relief under the Protection and Advocacy for Individuals with Mental Illness Act ("the PAIMI Act"), 42 U.S.C. §

10801 *et seq.*, and 42 U.S.C. § 1983 against Defendants Helen Hanks, in her official capacity as the Commissioner of the New Hampshire Department of Corrections ("Department"), and Michael A. Zenk, in his official capacity as the Warden of the New Hampshire State Prison for Men ("NHSPM").

2. DRC is the federally mandated Protection and Advocacy System ("P&A") for individuals with disabilities in the State of New Hampshire. 42 U.S.C. § 10801 *et seq.* As the P&A, DRC is empowered and obligated to protect the civil rights of individuals with mental illness. *Id.*

3. DRC has the responsibility and authority to investigate specific incidents of abuse and neglect of individuals with mental illness when it has probable cause to believe that abuse or neglect has occurred. 42 U.S.C. § 10805(a)(1)(A). DRC also has authority to access records of individuals with mental illness in the course of investigating allegations of abuse or neglect. 42 U.S.C. §§ 10805, 10806.

4. DRC has determined there is probable cause to believe that an individual with mental illness, who died while in Defendants' custody, was subject to neglect. DRC made repeated requests to Defendants for certain records that it is entitled to access under federal law. 42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.41(b)(2).

5. Defendants refuse to produce the requested records, thereby preventing DRC from fulfilling its statutory mandates of investigating allegations of abuse and neglect as well as providing protection and advocacy services for individuals with disabilities.

6. Accordingly, this action seeks a judgment under the PAIMI Act and 42 U.S.C. § 1983 that Defendants' failure to promptly produce the requested records violates federal law. DRC also seeks preliminary and permanent injunctive relief requiring Defendants to promptly provide

the requested records so that DRC may conduct an effective investigation into the death of an individual with mental illness.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law. Plaintiff's federal claim is made pursuant to the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and 42 U.S.C. § 1983. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

9. Plaintiff DRC, the P&A designated since 1978 to provide protection and advocacy services to individuals with disabilities, is a private, non-profit New Hampshire corporation. DRC receives federal funds pursuant to the PAIMI Act and is thereby obligated to provide protection and advocacy services to individuals with mental illness.

10. Defendant Helen Hanks is being sued in her official capacity as the Commissioner for the New Hampshire Department of Corrections. As Commissioner, Defendant Hanks is responsible for the operation of the Department.

11. Defendant Michael A. Zenk is being sued in his official capacity as the Warden for the New Hampshire State Prison for Men. As Warden, Defendant Zenk manages and oversees the daily operations of the NHSPM.

## IV. BACKGROUND LAW

12. The PAIMI Act and its implementing regulations give DRC, as New Hampshire's designated P&A, the authority to investigate incidents of abuse and neglect of individuals with

mental illness if the incidents are reported to DRC or there is probable cause to believe abuse or neglect occurred. 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.41-42.

13. An "individual with mental illness" under the PAIMI Act includes an individual "who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State . . . who is an inpatient or resident in a facility rendering care or treatment . . . ." 42 U.S.C. § 10802(4)(A)-(B)(i)(I).

14. "Facilities" is defined by the PAIMI Act to include prisons. 42 U.S.C. § 10802(3).

15. "Probable cause" under the PAIMI Act and regulations is defined as "reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." 42 C.F.R. § 51.2. The definition further provides that the "individual making such [probable cause] determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect." *Id.*

16. Under the PAIMI Act, "neglect" is defined as "a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to a individual with mental illness or which placed a individual with mental illness at risk of injury or death." 42 U.S.C. § 10802(5). This "includes an act or omission such as . . . the failure to provide a safe environment for a individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff." *Id.*

17. The PAIMI Act and its implementing regulations give DRC the authority to access "all records of . . . any individual (including an individual who has died or whose whereabouts are unknown)—

   i. who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;

   ii. who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

   iii. with respect to whom a complaint has been received by the system or with respect to whom . . . there is probable cause to believe that such individual has been subject to abuse or neglect."

42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.41(b)(2).

18.  The implementing regulations to the PAIMI Act define a "complaint" received by the P&A to include media accounts and newspaper articles. 42 C.F.R. § 51.2.

19.  The PAIMI regulations define the "records" available to the P&A to include "information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment." 42 C.F.R. § 51.41(c)(1).

20.  The term "records" includes information and individual records, "whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records . . . ." 42 C.F.R. § 51.41(c).

21.  "Records" also include "[r]eports prepared by an agency charged with investigating abuse[,] neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself . . . ." 42 C.F.R. § 51.41(c)(2). These include reports that describe "[a]buse, neglect, or injury occurring at the facility"; "steps taken to investigate the incidents"; "[r]eports and records, including personnel records, prepared or maintained by the facility, in connection

with such reports of incidents"; or "[s]upporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings." 42 C.F.R. § 51.41(c)(2).

22. The PAIMI Act provides that a P&A "which, pursuant to [42 U.S.C. §] 10805(a)(4) . . . has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall . . . maintain the confidentiality of such records to the same extent as is required of the provider of such services." 42 U.S.C. § 10806(a).

23. The PAIMI regulations permit the provider of records to assess a reasonable charge for costs of duplicating records. 42 C.F.R. § 51.41(e).

24. The PAIMI regulations mandate that "[a]ccess to records shall be extended promptly to all authorized agents of a P&A system." 42 C.F.R. § 51.41(a).

## V. FACTS

### A. DRC's Determination of Probable Cause to Investigate

25. On December 6, 2017, a 34-year-old man with mental illness died alone in a prison cell due to self-injurious behavior. He is hereinafter referred to by his initials "P.B."

26. DRC was made aware of the death the next day by a newspaper article stating that the individual died as a result of self-injurious behavior that occurred while he was alone in his cell in the Residential Treatment Unit ("RTU") at NHSPM. *Inmate dies at state prison treatment unit after 'self-injurious behavior'*, NH Union Leader, Dec. 7, 2017.

27. The Department's internal policies state that "[t]he RTU is designed for those inmates with mental illness who are unable to function in the general inmate population. The goal of this unit is to provide quality mental health services in order to maintain and assist individuals to function in the least restrictive and safest setting possible." NH Department of Corrections Policy and Procedure Directive 6.32, I.A (2009), *available at* https://www.nh.gov/nhdoc/policies/documents/6-32.pdf.

28. The Department's RTU policy sets forth the procedure for admission to the RTU, including a clinical assessment based on admission criteria that require the individual to have a diagnosed mental illness. *Id.* at IV.A.

29. The Department's 2016 Annual Report states that the RTU is "designed for male offenders who have a behavioral health condition and are struggling in a prison setting." NH Department of Corrections 2016 Annual Report, 23, *available at* https://www.nh.gov/nhdoc/divisions/publicinformation/documents/annual_report_2016.pdf. The 2016 Annual Report also states that the RTU offers "approximately 30 hours per week of structured therapeutic and diversional interventions" and that each resident has a "specific, individualized treatment plan using evidence-based treatments and behavioral health best practices." *Id.*

30. DRC determined that P.B. was an individual with a mental illness under the PAIMI Act as he had a diagnosed mental illness and was a "resident in a facility rendering care or treatment . . . ." 42 U.S.C. § 10802(4).

31. On December 15, 2017, DRC concluded that it had reasonable grounds to believe that the RTU and NHSPM may have neglected P.B., who died alone in his cell due to self-injurious behavior, by failing to provide him a safe environment. DRC thus determined it had probable

7

cause to suspect neglect and initiated an investigation into P.B.'s death pursuant to its federal authority under the PAIMI Act.

32. DRC concluded that it had authority to access P.B.'s records pursuant 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2) because: P.B. was an individual with a mental illness who died and was therefore unable to authorize DRC to access his records; P.B. did not have a legal guardian because a guardianship of the person terminates upon the death of the ward, N.H. Rev. Stat. Ann. § 464-A:40, I (2017), and; DRC had reasonable grounds to believe that the Defendants may have neglected P.B., resulting in his death.

33. On December 18, 2017, DRC notified counsel for the Defendants, in writing, that it had determined probable cause to investigate the death of P.B., made clear its statutory authority under the PAIMI Act, and requested P.B.'s records. *See* "December 18th Letter," attached hereto as **Exhibit A**.

34. DRC requested access to all records maintained by Defendants regarding P.B., including but not limited to, medical records, psychiatric and mental health records, admissions documentation, behavior plans, safety plans, treatment plans, and discharge planning records. DRC also requested records identifying P.B.'s disabilities and diagnoses, and records of medications administered during the seven days prior to his death.

35. DRC also requested any and all incident and other disciplinary reports, including but not limited to, the use of restraint, seclusion, physical contact with staff or residents, and the use of electronic control devices, as well as justification for the use of such methods and observations of P.B. during the reported episodes.

36. Further, DRC requested all investigation reports concerning the death of P.B., including peer review and quality assurance records, and all related documents or records reviewed during

the course of Defendants' investigations and/or relied upon in reaching findings and conclusions regarding P.B.'s death.

37. Finally, DRC requested Defendants' policies and procedures regarding investigations in the event of an inmate death.

38. The December 18th letter provided the statutory basis for the records request, 42 U.S.C. § 10805(a)(4)(B). DRC, relying on the promptness requirement for producing records at 42 C.F.R. § 51.41(a), requested that Defendants' make the requested records available by January 8, 2018.

### B. Defendants' Refusal to Provide Access to Records

39. Defendants failed to make any records available by the January 8th deadline or any date since. On January 9, 2018, counsel for the Defendants challenged DRC's probable cause determination, stating that DRC did not have probable cause to suggest that abuse or neglect had occurred. *See* "January 9th Letter," attached hereto as **Exhibit B**.

40. Defendants' counsel also indicated that if Defendants were to release any records, records of a pending investigation could not be released until the investigation concluded. *Id.* Counsel stated that the joint State Police and Department of Corrections investigation would be ongoing for at least another 90 days. *Id.*

41. On January 11, 2018, DRC replied, in writing, to the Defendants. DRC restated its statutory authority to investigate P.B.'s death, explained in greater detail why it determined there is probable cause to suspect neglect, and emphasized that the P&A is the final arbiter of probable cause for the purpose of triggering its federal access authority under the PAIMI Act. *Arizona Center for Disability Law v. Allen*, 197 F.R.D 689, 693 (D. Ariz. 2000); *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 321 (D. Conn. 2003).

DRC requested a response by January 16, 2018 to discuss the release of all requested records. *See* "January 11th Letter," attached hereto as **Exhibit C**.

42. Defendants did not respond to DRC's January 11th letter. On January 23, DRC left a voice message for Defendants' counsel, requesting a return phone call regarding the status of its records request. Receiving no response, DRC left another voice message for counsel on January 25, 2018.

43. On January 26, 2018, DRC sent an email to Defendants' counsel, requesting a response to its records request as soon as possible. Defendants' counsel replied via email on that same day, stating that counsel "would take a look at [the January 11th] letter, likely this weekend and respond." DRC sent a reply email requesting a response before the end of business on January 29, 2018. Defendants' counsel replied, via email, that counsel would try to meet DRC's demand for a response to its records request. *See* "January 26th and January 30th emails," attached hereto as **Exhibit D**.

44. Defendant's counsel did not respond. On January 30, 2018, DRC again contacted Defendants' counsel by email, requesting a status update on Defendants' written response to the records request. After receiving no response, DRC left another voice message for Defendants' counsel on January 31, 2018.

45. On February 2, 2018, DRC had a phone conversation with counsel for Defendants, who stated that the January 11th request for records had not yet been reviewed. Counsel was unable to state when DRC could expect a response. During the phone conversation, counsel maintained Defendants' position that DRC did not have probable cause to investigate P.B.'s death.

46. As of the date of the filing of this complaint, Defendants have not responded to the January 11th letter reiterating DRC's authority to access P.B.'s records, nor has DRC received any of the records which it is entitled to access promptly in order to investigate P.B.'s death.

## VI. CLAIMS

47. Plaintiff adopts and restates the allegations set forth in paragraphs 1-46 of this complaint.

48. DRC is authorized to access all records of P.B. pursuant to the PAIMI Act, 42 U.S.C. § 10805(a)(4)(B), and its implementing regulations, 42 C.F.R. § 51.41(b)(2), and DRC is likely to succeed on the merits of this claim.

49. By refusing to promptly comply with DRC's requests for records, the Defendants acted under color of state law to deprive DRC of its rights secured by federal law.

50. Unless Defendants are enjoined from failing to promptly provide DRC the access to records required by the PAIMI Act, DRC will have no adequate remedy at law and will continue suffering immediate and irreparable harm to its ability to investigate suspected abuse and neglect and protect people with mental illness in New Hampshire.

51. The harm that Defendant's refusal to produce records causes DRC, and the individuals whom DRC protects, outweighs any harm that complying with federal law will cause Defendants. Defendant's burden in producing records will be minimal because Defendants may require DRC to pay reasonable copying costs and DRC must maintain the records' confidentiality to the same extent as Defendants.

52. The public interest favors prompt enforcement of federal law protecting individuals with mental illness from abuse and neglect.

53. Plaintiff is entitled to relief under 42 U.S.C. § 10805, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983.

## VII.  RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief:

1. a declaratory judgment that Defendants' refusal to provide the requested records violated the PAIMI Act;

2. a preliminary and thereafter permanent injunction requiring the Defendants to promptly provide DRC with access to the requested records pursuant to its federally mandated P&A authority;

3. a preliminary and thereafter permanent injunction ordering Defendants to provide timely and complete responses to all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

4. waiver of the security bond for issuing an injunction;

5. retention of jurisdiction over this action to ensure Defendants' compliance with the mandates of the PAIMI Act;

6. an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

7. any such other relief as the Court deems just, equitable and appropriate.


Respectfully submitted,

/s/ Andrew L. Milne
N.H. Bar No. 268073
Email: andrewm@drcnh.org

/s/ Francesca Broderick
N.H. Bar No. 265305
Email: francescab@drcnh.org

Attorneys for Plaintiff

Disability Rights Center – New Hampshire
64 North Main Street, Suite 2

Concord, NH 03301-4913
Phone: (603) 228-0432
Fax: (603) 225-2077

Dated: February 20, 2018

## Verification

I, Francesca Broderick, verify under penalty of perjury that I have read the foregoing complaint, that I have personal knowledge of the facts concerning DRC's determination of probable cause to investigate suspected neglect and DRC's subsequent communication with counsel for Defendants, and that those facts, as stated in the foregoing complaint, are true and correct to the best of my knowledge and understanding.

Executed this 20 day of February, 2018.

_____
Francesca Broderick

Case 1:18-cv-00160-LM   Document 1   Filed 02/20/18   Page 15 of 15